UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

BURTON DIFIGLIA,


                    *Plaintiff*,

    -against-

                                  **MEMORANDUM AND ORDER**
                                  22-CV-6825 (KAM)

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                    *Defendant.*

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Burton Difiglia ("Plaintiff") brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for supplemental security income. The parties have cross-moved for judgment on the pleadings. (ECF Nos. 14, 15.) For the reasons set forth below, the Court respectfully DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion.

<u>**BACKGROUND**</u>

    The parties have filed a joint stipulation of relevant facts, which the court has reviewed and incorporates by reference. (*See generally* ECF No. 16, Joint Stipulation of Facts ("Stip.").)

**I.   Factual and Procedural Background**

Plaintiff was 25 years old on the alleged onset date of his disability, and formerly worked as a sales representative at a car dealership, a cellphone store, and a shoe store. (Stip. at 1.) Plaintiff testified that he stopped working following a nervous breakdown brought on by heightened stress at work and was unable to return to his sales position due to stress and panic attacks. (*Id.* at 3.) Prior to the alleged onset date, Plaintiff had a history of poor mental health and suicide attempts and has been engaged with various mental health programs. (*Id.* at 4 – 11). During a hearing before the SSA, Plaintiff testified that when he is under stress, he gets "paranoid delusions" which interferes with his "basic functions at work," and that he believed his condition prevents him from working. (ECF No. 13, Administrative Transcript ("Tr.") at 41.)

Plaintiff protectively filed an application for supplemental security income ("SSI") on February 26, 2020, claiming onset of disability on January 1, 2019. (*Id.* at 58.) In connection with his SSI application, Plaintiff met with two consultative examiners. First, Dr. Andrea Pollack conducted an orthopedic examination of Plaintiff on June 16, 2020. (*Id.* at 570.) Second, Dr. Paul Herman conducted a psychiatric examination of Plaintiff, also on June 16, 2020. (*Id.* at 576.) Two reviewing state agency examiners, Drs. Ahmed and Weitzen, also opined on Plaintiff's psychiatric and physical conditions as part of the disability

review process based on their review of the record. (*Id.* at 58-73.)

The Social Security Administration denied Plaintiff's application on June 24, 2020, after which Plaintiff filed for reconsideration on August 3, 2020, and was denied again upon reconsideration on October 3, 2020. (*Id.* at 10, 99.) As part of the reconsideration process, two state agency examiners, Drs. Kamin and Kirsch, conducted a review of the record and opined on Plaintiff's psychiatric and physical limitations. (*Id.* at 74-91.) Plaintiff filed a written request for a hearing by an Administrative Law Judge on November 3, 2020, and a telephonic hearing was subsequently held on June 8, 2021, before ALJ Patrick Kilgannon (the "ALJ"). (*Id.* at 10.)

By decision dated June 25, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") since February 26, 2020, the application date. (*Id.* at 21.) Plaintiff appealed the ALJ's decision to the Appeals Council on June 28, 2021. (*Id.* at 182.) The appeal was denied September 26, 2022, and Plaintiff filed the instant action on November 8, 2022. (*Id.* at 1; ECF No. 1, Complaint.)

## II. **Hearing before the ALJ**

Plaintiff was represented by attorney Francis Kehoe at the June 8, 2021, hearing before the ALJ, and medical expert Gerald P.

Koocher and vocational expert Yaakov Taitz both offered testimony. (Tr. at 27.)

Plaintiff's hearing before the ALJ began with testimony from Dr. Koocher, an expert in the field of psychology. (*Id.* at 28-29.) Dr. Koocher discussed Plaintiff's mental health history, and noted that Plaintiff "went through a period of significant instability in 2019 where he had multiple . . . short-term psychiatric hospital admissions" but that "since 2019, [Plaintiff] has actually been able to do reasonably well in terms of coping and being out of the house." (*Id.* at 31-32.) Dr. Koocher further testified that Plaintiff "probably could not have been employed during 2019, but in the period after that," Plaintiff's condition improved. (*Id.* at 33.) Dr. Koocher also answered questions from Plaintiff's attorney, who asked about portions of medical opinions that found more severe restrictions than Dr. Koocher assessed. (*Id.* at 35-38.)

Following Dr. Koocher's testimony, Plaintiff was examined by his attorney, and testified as to the reasons he previously stopped working, as well as the conditions affecting his ability to work. (*Id.* at 39-41.) Plaintiff explained that he was currently taking Tramadol and Cymbalta for his conditions and described some of the side effects of the medications. (*Id.* at 42.) The ALJ subsequently called on vocational expert Yaakov Taitz (the "VE") to offer testimony. (*Id.* at 43-44.) To provide further

clarification on Plaintiff's work history for the VE, the ALJ
questioned Plaintiff as to his prior work as a sale associate with
respect to cellular telephones. (*Id.* at 44-45.) Plaintiff noted
that he stood most of the time at a kiosk while working, and the
VE classified his past work as being a sales associate or a sales
person. (*Id.* at 45-47.)

The ALJ subsequently asked the VE to consider a person of the
Plaintiff's age, education, and work experience, who "could lift
or carry up to 50 pounds occasionally, and 20 pounds frequently;
can stand and/or walk about six hours in an eight hour workday,
and sit about six hours in an eight hour workday; in terms of
postural limitations, assume the individual can frequently --
ropes, scaffolds, ramps, and stairs, and can frequently crawl"
(*Id.* at 48.) The VE testified that such a person could perform
Plaintiff's past work, either as it is customarily performed or as
he specifically performed it. (*Id.*) In a second hypothetical,
the ALJ added in mental non-exertional limitations, and asked the
VE to "assume the individual is capable of performing simple,
routine tasks; can sustain concentration for simple, routine
tasks; can maintain a schedule; can make simple work-related
decisions; can occasionally interact with supervisors, coworkers,
and the public; and can occasionally adapt to changes in the work
setting." (*Id.* at 48-49.) The VE testified that such an
individual would not be able to perform Plaintiff's past work, but

could perform work as a Hand Packager, Price Marker, or Housekeeping Cleaner. (*Id.* at 49-50.)

The ALJ next asked the VE to consider a person who would have to be absent in excess of four days per month. (*Id.* at 50.) The VE confirmed that while missing one day of work per month would be acceptable, four days missed per month would preclude the hypothetical individual from employment. (*Id.*) Last, in response to a question from Plaintiff's attorney about an individual that was "unable to regulate their emotions, resulting in them occasionally being interrupted in the workplace for up to a third of a day," the VE confirmed such a condition would prevent an individual from performing work. (*Id.* at 51.) The VE elaborated that no more than 10% time off-task would be tolerated in competitive employment. (*Id.* at 51-52.)

## III. The ALJ's Decision

Pursuant to the SSA regulations, an ALJ follows a five-step process for evaluating disability claims, which has been summarized as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider h[er] [*per se*] disabled....

6

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. Finally, if the claimant is unable to perform h[er] past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)). "The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." *Id.* To determine the claimant's residual functional capacity ("RFC"), the ALJ must consider the claimant's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

In the instant case, the ALJ denied Plaintiff's application for SSI on June 25, 2021. (Tr. at 7.) Following the five-step process set forth in SSA regulations, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 26, 2020, the application date. (*Id.* at 12.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: degenerative disc disease of the lumbar spine; major depressive disorder; anxiety disorder." (*Id.*) The ALJ also determined that Plaintiff's other alleged impairment — obesity — was not sufficiently severe as to satisfy the step two criteria. (*Id.*)

At step three, the ALJ found that Plaintiff's impairments did not meet or were not the medical equivalent of any listed impairments in the Disability Listings. (*Id.* at 13.)  The ALJ considered listings in section 1.00 (Musculoskeletal Disorders) but found that "[n]o treating or examining physician has proffered findings that are equivalent in severity to the criteria of these or any other listed impairment." (*Id.*)

The ALJ next evaluated whether Plaintiff's mental impairments met Listings 12.04 (regarding affective disorders, including depression), or 12.06 (regarding anxiety-related disorders). (*Id.*)  The ALJ found that Plaintiff did not meet any of the "paragraph B" criteria for Listings 12.04 and 12.06. (*Id.* at 13-14.)  Specifically, the ALJ found that Plaintiff had no more than a moderate limitation to his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (*Id.* at 14.)  Because the ALJ found that Plaintiff exhibited no "marked" or "extreme" limitations, the ALJ concluded that Plaintiff did not satisfy the paragraph B criteria. (*Id.*)  The ALJ likewise found that Plaintiff did not satisfy the "paragraph C" criteria for either listing. (*Id.*)

Having found that Plaintiff did not meet the criteria of Listings 1.15, 1.16, 1.18, 12.04, and 12.06, the ALJ next assessed Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to
> perform medium work as defined in 20 C.F.R. § 416.967(c)[1]
> except he is capable of lifting, carrying, pushing and
> pulling up to 50 pounds occasionally and 20 pounds
> frequently, and can sit 6 hours and stand/or walk 6 hours
> in an 8-hour workday, and can frequently climb and crawl,
> and is only capable of performing simple routine tasks,
> can sustain concentration for simple routine tasks, can
> maintain a schedule, can make simple work related
> decision[s], can occasionally interact with supervisors,
> coworkers and the public and can occasionally adapt to
> changes in the work setting.

(*Id.* at 14-15.)   Regarding Plaintiff's impairments, the ALJ

credited Plaintiff's claims of symptoms, but found that his

"statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." (*Id.* at 16.)

The ALJ noted evidence from Plaintiff's medical records that his

conditions had been managed by medication, and that his mental

health was improved or doing well, in particular through 2020 and

2021 after his history of hospitalizations in 2019.  (*Id.*)  The

ALJ also noted that there was no evidence to substantiate

allegations of severe lower back pain, and that Plaintiff did not

require an assistive device to ambulate or any medication for his

back pain.  (*Id.*)

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds. If someone can do
medium work, [the Social Security Administration] determine[s] that he or she
can also do sedentary and light work." 20 C.F.R. § 416.967(c).

In reaching his RFC conclusion as to Plaintiff's physical abilities, the ALJ evaluated the opinions of the various treating physicians and considered opinion evidence as to Plaintiff's functional capacities. (*Id.* at 17-19.)

First, the ALJ found the June 2020 opinion of Dr. Andrea Pollack, a consultative examiner, to be "somewhat persuasive" as it was based on a complete physical examination. (*Id.* at 17.) Dr. Pollack assessed a "moderate restriction in squatting, bending, lifting, and carrying" and a "mild restriction in walking, standing, sitting, and climbing." (*Id.*) The ALJ found Dr. Pollack's opinion to be "largely based upon [Plaintiff's] self reporting" and noted that "the record is devoid of any other evidence to support his allegations of debilitating lower back pain," which made the opinion less persuasive. (*Id.*)

Second, the ALJ found the opinion of consultative examiner Dr. Paul Herman to be "persuasive" as it was based on an in-person evaluation and was consistent with treatment notes from other providers. (*Id.*) Dr. Herman opined that "there appears to be no evidence of limitation with respect to this claimant's ability to understand, remember, or apply simple directions and instructions and use reason and judgment to make work-related decisions." (*Id.*) Dr. Herman assessed a mild limitation with respect to "sustaining concentration and performing a task at a consistent pace and with sustaining an ordinary routine and regularly attending work," and

an intermittent moderate limitation with respect to "interacting adequately with supervisors, coworkers, and the public and regulating emotions." (*Id.*)

Third, the ALJ found the opinion of Ms. Anne Marmorale and Ms. Lauren Kuhnel, Plaintiff's treating nurse practitioner and social worker, respectively, "less persuasive" as he found the opinion "inconsistent with treatment notes reporting [Plaintiff] to be psychiatrically stable with generally healthy mental status exams beginning 2020." (*Id.* at 17-18.)  Ms. Marmorale and Ms. Kuhnel assessed marked limitations in several areas of mental functioning and opined that Plaintiff would be absent from work more than 4 days per month as a result of his condition. (*Id.*) Noting that treating opinions are generally given great deference, the ALJ nonetheless found that the opinion was "not objectively supported and at times [is] even contradicted by [the providers'] treatment notes." (*Id.* at 18.)

Fourth, the ALJ found the opinions of reviewing state agency examiners Drs. Kamin and Weitzen to be "generally persuasive" as they were consistent with the evidence of record and "based upon thorough reviews of the medical evidence by doctors that are familiar with the [SSA's] standards." (*Id.*) Dr. Weitzen assessed moderate limitations in several areas of functioning, and mild limitations in other areas, an opinion with which Dr. Kamin concurred. (*Id.*)

11

Fifth, the ALJ found the opinion of Dr. S. Ahmed, a reviewing state agency physician who opined that Plaintiff does not have a physical impairment causing "greater than a de minimis effect ton his ability to engage in work related activity" to be "less persuasive." (*Id.*)  The ALJ noted that the opinion was based upon a file review and was "not consistent with that of the consultative examiner . . . who performed an in-person evaluation." (*Id.* at 19.)

Sixth, the ALJ found the opinion of Dr. M. Kirsch, another reviewing state agency physician, to be "persuasive," despite also being based on a record review alone, becuase it was consistent with the findings of the consultative examiner. (*Id.*)  Dr. Kirsch opined that Plaintiff "can lift and carry up to 50 pounds occasionally and up to 20 pounds frequently . . . can sit, stand and walk for up to 6 hours total in an 8-hour workday . . . [and] can frequently climb, stoop, and crawl." (*Id.*)

Finally, the ALJ noted the testimony of Dr. Koocher, which he found to be "more persuasive" than that of Plaintiff's treating providers. (*Id.*)  The ALJ noted that Dr. Koocher also found the opinion of Ms. Marmorale and Ms. Kuhnel to be unsupported by the record, and that Dr. Koocher "testified that [Plaintiff] has done well since [his hospitalizations in 2019] and is coping since his last hospital discharge, with no more than mild to moderate limitations in the [paragraph] B criteria since [2019]." (*Id.*)

At step four, the ALJ concluded that due to Plaintiff's severe impairments, he could not perform his past relevant work as a Sales Representative, which "requires frequent interaction with supervisors, coworkers and the public." (*Id.* at 20.)   At step five, the ALJ assessed whether "there [were] jobs that existed in significant numbers in the national economy" considering Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  (*Id.*)  Because Plaintiff's RFC was less than the performance requirements for medium work under the Medical-Vocational Rules, the ALJ relied on the VE's opinion. (*Id.*)  The ALJ accepted the VE's testimony that a person with Plaintiff's exertional and non-exertional limitations could perform the jobs of hand packager, price marker, and housekeeping cleaner, each of which existed in significant numbers in the national economy.  (*Id.*)  The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (*Id.* at 21.)

## **LEGAL STANDARD**

### I. Standard of Review

An unsuccessful claimant for disability benefits under the Act may bring an action in federal court seeking judicial review of the Commissioner's denial of his or her benefits. 42 U.S.C. §§ 405(g), 1383(c)(3).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only

if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quotations and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla'" and must be relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).

In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). It is "up to the agency," however, and "not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. *See* 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

Inquiry into legal error requires courts to ask whether the claimant "has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d

Cir. 2009) (citation omitted; second alteration in original).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

## II.  Determination of Disability

To receive disability insurance benefits ("DIB") or SSI, a claimant must be "disabled" under the Social Security Act.  42 U.S.C. §§ 423(a), 1382(a).  The claimant is "disabled" when he or she is unable to "engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that could be expected to result in death or has lasted for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[2]  The impairment must be of "such severity" that the claimant cannot do his or her previous work or any other substantial gainful work that "exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  In determining whether the claimant is disabled, the Commissioner must consider (1) the objective medical facts in the record; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain or

---

[2] The provisions of the Social Security Act governing DIB and SSI use the same standards to determine disability.  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Thus, cases addressing disability as to one form of benefits are equally instructive as to the other.  *Coughlin v. O'Malley*, No. 21-CV-2252 (KAM), 2024 WL 833246, at *3 n.6 (E.D.N.Y. Feb. 28, 2024).

disability; and (4) the claimant's education, age, and work experience. *Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94, 97 (E.D.N.Y. 2022).

## DISCUSSION

Plaintiff contends that (1) the ALJ failed to adequately develop the record with respect to Plaintiff's lower back pain, (2) the ALJ failed to consider all of Plaintiff's severe conditions at Step 2, (3) the ALJ's determination that Plaintiff did not meet or medically equal Listings 12.04 and 12.06 at Step 3 was erroneous, (4) the ALJ's Residual Functioning Capacity ("RFC") findings were not supported by substantial evidence, (5) the vocational expert's (VE) testimony was inconsistent with the Dictionary of Occupational Titles (DOT), and (6) the ALJ improperly analyzed opinion evidence. (ECF No. 14-1, Memorandum of Law in Support of Plaintiff's Motion for Judgement on the Pleadings ("Pl. Mem."), at 3, 4, 8, 14, and 17.)

## I. The ALJ Sufficiently Developed the Record

"Whether the ALJ has met his duty to develop the record is a threshold question that must be determined before the Court reviews whether the ALJ's final decision is supported by substantial evidence." *Miranda v. Comm'r of Soc. Sec.*, No. 22-CV-4226 (PKC), 2023 WL 6385727, at *6 (E.D.N.Y. Sept. 29, 2023) (internal quotation marks and citation omitted). Even when not raised by a plaintiff, the Court "must independently consider the question of

whether the ALJ failed to satisfy his duty to develop the Record." *Sanchez v. Saul*, No. 18-CV-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020), *report and recommendation adopted sub nom. Sanchez v. Comm'r of Soc. Sec.*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).  "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  This duty exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Plaintiff contends that the ALJ failed to fully develop the record as to Plaintiff's claims of lower back pain.  (Pl. Mem. at 9).  However, "where an ALJ has a "complete record before [him] consisting of medical opinions, treatment notes, and test results . . . the ALJ did not err in failing to supplement the administrative record." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022).

In the instant case, prior to any determination of disability, Plaintiff spoke to a representative regarding his disability application on April 1, 2020.  (Tr. at 227.)  The representative

explained that he had "providers on [the] application for mental health" but that there was also an "allegation of a spine/back problem" in Plaintiff's application. (*Id.*) The representative asked if Plaintiff was in current treatment for his back, and Plaintiff stated that he had not seen a doctor for over three years. (*Id.*) According to the call summary, Plaintiff reported that he had experience back pain since he was 18 years old, but that it "is not why he stopped working" and that he "wishes he didn't [put] the back allegation down [because] it's his mental health that affects him the most." (*Id.*) Asked if the back pain affected daily tasks or "getting around," Plaintiff answered that it did not, but explained that he did not think he could do "manual labor." (*Id.*) The representative closed the call by explaining that he "may have to order [a consultative examiner] to examine further." (*Id.*)

Plaintiff was subsequently examined by consultative examiner Dr. Pollack on June 16, 2020. (*Id.* at 570.) Dr. Pollack documented Plaintiff's complaints of back pain and medical history, including surgery in 2013, and conducted a physical examination, but deferred conducting an x-ray of the spine. (*Id.* at 570-72.) Ultimately, Dr. Pollack assessed moderate and mild restrictions to physical activity, and diagnosed Plaintiff as having back pain, flat feet, and elevated blood pressure. (*Id.* at 572.) The record was also supplemented with additional medical opinions regarding

Plaintiff's physical conditions based upon record reviews.  (*Id.* at 58-91.)

When an ALJ is confronted with a "recognized severe impairment," and a lack of evidence of treatment, he or she is obliged to develop the record more fully to ensure an accurate assessment of an individual's RFC. *Burger v. Astrue*, 282 F. App'x 883, 884-85 (2d Cir. 2008) (summary order).  One of the specific options available in such a situation is "pay[ing] for a consultative examination where necessary to ensure a developed record." *Id.* at 885.  "A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).

Here, confronted with a potential lack of evidence regarding Plaintiff's allegations of back pain, for which Plaintiff had denied treatment for three years and stated the back pain did not limit him except as to manual labor, (Tr. at 227), Plaintiff underwent a consultative examination to further develop the record.  Although the ALJ would later state in his opinion that there is "insufficient evidence" to substantiate Plaintiff's allegations of lower back pain, that comment reflects a lack of evidence *within* a fully developed record.  (*Id.* at 16.)  An ALJ is

permitted to comment on a lack of evidence, and Plaintiff fails to point to any outstanding medical records in existence that the ALJ could have helped to obtain. (Pl. Mem. at 9.) Thus, the Court concludes that the ALJ met his burden to develop the record in the instant case.

## II. The ALJ's Analysis of Non-Severe Impairments

Plaintiff argues that the ALJ improperly determined that his obesity was not a severe impairment. (Pl. Mem. at 3). However, Plaintiff did not raise his obesity as an impairment or limitation until he filed his brief in this case, beyond noting that his medical records reflect a diagnosis of obesity. (Tr. at 58, 250.) Specifically, Plaintiff's initial application alleged disability only due to bipolar disorder, anxiety disorder, degenerative disc disease, and spinal stenosis. (*Id.* at 58.) Plaintiff argues, however, that "it was improper for the ALJ to summarily dismiss [his obesity] and determine that it is non-severe." (Pl. Mem. at 3.)

Obesity may be considered "severe," and thus medically equal to a listed disability, if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *See* Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 67 FR 57859-02. As a result, an ALJ must consider the effects of obesity when

20

evaluating disability.  *See* Social Security Ruling, SSR 00-3p.
Titles II and XVI: Evaluation of Obesity, 65 FR 31039-01.

"However, obesity is not in and of itself a disability, and
an ALJ's failure to explicitly address a claimant's obesity does
not warrant remand." *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp.
3d 89, 102 (S.D.N.Y. 2015) (internal quotation marks and citation
omitted).  "Where the record contains evidence indicating
limitation of function due to obesity, the ALJ must consider the
effect of obesity on the claimant's ability to do basic work
activities at steps two through four of the sequential evaluation
process." *Id.*  "Conversely, the ALJ's obligation to discuss a
claimant's obesity alone, or in combination with other
impairments, diminishes where evidence in the record indicates the
claimant's treating or examining sources did not consider obesity
as a significant factor in relation to the claimant's ability to
perform work related activities." *Id.*

Plaintiff's counsel did not elicit any testimony from
Plaintiff or raise his obesity during the hearing before the ALJ,
and the Court finds no other evidence in the record indicating
that his obesity limits his ability to function.  (Tr. at 28-53.)
Dr. Pollack noted Plaintiff's obesity in her consultative
examination but did not assess any limitations based on that
condition specifically.  (*Id.* at 570-72.)  Additionally, the ALJ
properly considered Plaintiff's non-severe medically determinable

impairment of obesity when assessing his RFC, noting Plaintiff's height and weight as measured by the consultative examiner. (*Id.* at 16). As such, even if the ALJ had erred at step two, the error was harmless insofar as the ALJ considered both Plaintiff's severe and non-severe impairments in the later steps. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (summary order).

Plaintiff offers no explanation as to how the ALJ's consideration of his obesity would indicate a lack of substantial evidence for the ALJ's decision, beyond noting that "this type of weight would negatively affect [Plaintiff's] lower back condition." (Pl. Mem. at 3.) The Court finds this argument to be without merit, and thus, the ALJ did not err in finding that Plaintiff's obesity was not a severe impairment. *See, e.g., Browne,* 131 F. Supp. 3d at 102 (ALJ did not err in failing to address obesity when record was "devoid of any evidence" that obesity limited plaintiff's ability to function); *Britt v. Astrue,* 486 F. App'x 161, 163 (2d Cir. 2012) (summary order) (ALJ did not err in determining that obesity was not a severe impairment where the claimant "did not furnish the ALJ with any medical evidence showing how the[] alleged impairment[] limited his ability to work"); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (summary order) (ALJ did not err in consideration of obesity where "there [was] no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the claimant's]

ability to perform light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q).

### III. The ALJ's Assessment of Listed Impairments

Plaintiff argues that the ALJ did not properly evaluate at step three whether Plaintiff's severe impairments met or were medically equivalent to Listings 12.04 and 12.06. (Pl. Mem. At 4.) Specifically, Plaintiff contends that the ALJ mistakenly determined that the "paragraph B" criteria were not satisfied even though "it is clear that Plaintiff's mental health conditions - and his symptoms associated therewith – causes marked limitations in each of the areas of mental functioning." (*Id.* at 4). The Court does not find Plaintiff's argument persuasive.

Each Listing states "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). "To satisfy their burden, claimants must 'meet all of the specified medical criteria [in the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Flores v. Comm'r of Soc. Sec.*, 644 F. Supp. 3d 53, 64 (S.D.N.Y. 2022) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Additionally, a court may be able to uphold an ALJ's finding that a plaintiff does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence." *Wayne*

*P. v. Kijakazi*, No. 22-CV-653, 2023 WL 3949877, at *4 (N.D.N.Y. June 12, 2023) (citation omitted).

As discussed *supra,* the ALJ specifically addressed listings 12.04 and 12.06 in his step three analysis. To meet the "paragraph B" criteria of listing 12.04 or 12.06, a plaintiff must establish an extreme limitation of one area or a marked limitation of two areas of mental functioning, which include (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In his decision, the ALJ explicitly discussed each of the paragraph B criteria, and cited evidence in the record supporting each consideration. (Tr. at 13-14.) In particular, the ALJ relied on a medical opinion from Dr. Paul Herman, a consultative examiner, Plaintiff's treatment records, and also discussed Plaintiff's activities of daily living. (*Id.*)

Ultimately, the ALJ found that Plaintiff has no more than moderate limitations in understanding, remembering or applying information; in interacting with others; in concentrating, persisting or maintaining pace; and in adapting and managing oneself. (*Id.* at 14.) In support of these findings, the ALJ noted consultative examiner Dr. Herman's opinion that Plaintiff had some deficits in his recent memory skills, but that his remote memory skills were intact. (*Id.*). The ALJ cited Dr. Herman's observation

24

that plaintiff was "cooperative with adequate social skills."
(*Id.*)  The ALJ noted that Plaintiff's attention and concentration
skills were "generally not observed to be impaired," citing to
Plaintiff's mental health treatment records.  (*Id.*)  The ALJ
considered that Plaintiff was observed as "irritable" and "snappy"
with others and had had a girlfriend in the past who broke up with
him in determining he would have moderate difficulties in
interacting with others.  (*Id.*)  The ALJ also noted Plaintiff's
previous history of suicide attempts, but explained that "since
his application date, [Plaintiff] has generally been able to
regulate his emotions, with a few episodes of lapses" in assessing
a moderate limitation to adapting or managing oneself.  (*Id.*)  The
ALJ therefore concluded that Plaintiff's mental impairments did
not cause at least two marked limitations or one extreme
limitation, and that the paragraph B criteria of Listings 12.04
and 12.06 were not satisfied. (*Id.*)

### a. Plaintiff's Limitation to Understanding, Remembering, or Applying Information

Turning first to the ALJ's assessment that Plaintiff had a
moderate limitation in understanding, remembering, or applying
information, the Court notes that the ALJ incorrectly stated that
Plaintiff "graduated from high school in regular education
classes" in making his determination.  (*Id.*)  As noted in
Plaintiff's Disability Report, Plaintiff attended special

25

education classes in high school. (*Id.* at 201.)  The Court does not find this error to impact the ALJ's analysis, however. Consultative examiner Dr. Herman, upon whose opinion the ALJ relied, assessed Plaintiff as having "average" cognitive functioning following his examination. (*Id.* at 578.)

The court is inclined to view the ALJ's error as a minor factual inaccuracy.  The ALJ's determination of Plaintiff's capacity for understanding, remembering or applying information did not turn on his education, citing to it only a single time.[3] (*Id.* at 14). Furthermore, Plaintiff's special education classes are not mentioned elsewhere in the record beyond his Disability Statement. (*See generally* Tr.)  Instead, the ALJ relied more heavily on Dr. Herman's and Dr. Koocher's testimony as to Plaintiff's limitation in this area. (*Id.* at 14.)  In addition, courts in this Circuit have previously concluded that attending special education classes is not necessarily incompatible with a moderate limitation in understanding, remembering, or applying information. *See, e.g., Reece v. Kijakazi*, No. 22-CV-674 (BCM), 2023 WL 6211788, at *5 (S.D.N.Y. Sept. 25, 2023) (ALJ assessed, and plaintiff did not challenge, a mild limitation to understanding, remembering, or applying information when Plaintiff completed school through the ninth grade in special education

---

[3] The Court also notes that Plaintiff attended some college after graduating from high school.  (Tr. at 258, 576, 736).

classes); *Candy A. O. v. Kijakazi*, No. 20-CV-0766, 2022 WL 226804, at *11 (N.D.N.Y. Jan. 26, 2022) (ALJ did not err in finding that the plaintiff was only moderately limited in understanding, remembering, or applying information despite Plaintiff's reported history of special education due to a learning disability while in school); *Edwards v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-4345 (RWL), 2023 WL 6173526, at *5, 18 (S.D.N.Y. Sept. 22, 2023) (ALJ assessed a mild limitation at Step Three as to understanding, remembering, or applying information when Plaintiff completed school through tenth grade and received special education classes).  Thus, this court finds the ALJ's error in stating that the Plaintiff attended regular education high school classes to be harmless.

Plaintiff also asserts that the ALJ's finding of "average intelligence" is unsupported by the record, citing to an excerpt from Exhibit 12F noting that Plaintiff has "borderline intellectual functioning." (Pl. Mem. at 5 (citing Tr. at 489).) Though Plaintiff claims this is the "only reference to intellectual functioning in the file," (Pl. Mem. at 5), he is incorrect, as the ALJ relies on Dr. Herman's opinion that Plaintiff's cognitive functioning was "[a]verage" and his "[g]eneral fund of information appropriate to experience." (Tr. at 578.)  The Court also notes that the report of "borderline intellectual functioning" does not appear in medical opinion evidence, but instead as part of a list

of "challenges" in Plaintiff's "Coordinated Care Plan" prepared by a case manager who was assisting Plaintiff in getting access to healthcare resources and benefits programs. (*Id.* at 489-496.)  As such, the Court does not find that the ALJ erred in relying on Dr. Herman's opinion regarding Plaintiff's cognitive functioning.

Ultimately, "[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).  Here, the court finds that the ALJ sufficiently considered the evidence concerning Plaintiff's cognitive functioning, and that his determination of no more than a moderate limitation in understanding, remembering, or applying information was supported by substantial evidence.

### b. The Remaining Paragraph B Criteria

In addition to disputing the evidence on which the ALJ's determination of a "moderate" limitation to understanding, remembering, or applying information relied, Plaintiff also presents "other medical evidence in the file" which supports a "marked" or "extreme" limitation in that area of mental functioning and others. (Pl. Mem. at 5-7.)  In making this argument, Plaintiff impermissibly seeks for the Court to reweigh the evidence in favor of the Plaintiff.  A plaintiff may not simply "present the facts in a different light, seeking to have this Court weigh them

28

differently than the ALJ." *Rivera v. Kijakazi*, No. 22-CV-6976 (RWL), 2023 WL 6035665, at *7 (S.D.N.Y. Sept. 15, 2023). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The ALJ, presented with medical opinion evidence from Dr. Herman assessing no more than an "intermittent moderate" limitation in any area of mental functioning, and hearing testimony from Dr. Koocher confirming the same, chose to weigh Dr. Herman's opinion evidence more heavily than opinion evidence to the contrary. (Tr. at 14.) Combined with improvements in Plaintiff's condition from 2020 forward and supporting medical record evidence, the ALJ properly concluded that a "moderate" limitation was appropriate for each area of mental functioning. (*Id.*) To the extent Plaintiff cites evidence that would support a conclusion to the contrary, the presence of conflicting evidence is not uncommon, and it is up to the ALJ to resolve those conflicts. *See Veino*, 312 F.3d at 588 (ALJ is free to resolve conflicts of evidence and to credit only portions of a medical opinion which were supported by relevant evidence). The ALJ properly carried out his duty to resolve conflicting evidence, and even if he could have done so differently, "the ALJ's failure to interpret the evidence in the way Plaintiff prefers does not warrant remand."

*Charles W. v. Kijakazi*, No. 20-CV-01298, 2022 WL 2207182, at *6 (W.D.N.Y. June 21, 2022).  Thus, the Court is satisfied that the ALJ adequately supported his Step Three conclusions.

**IV.  The ALJ's Residual Functional Capacity Findings and Evaluation of Related Opinion Evidence**

Plaintiff argues that the ALJ's RFC determination was "fraught with issues" and "not supported by substantial evidence." (Pl. Mem. at 8.)   Plaintiff contends that the ALJ's RFC determination conflicted with Dr. Pollack's medical opinion (*id.* at 9), that the ALJ's mental RFC determination was "not in line with the medical evidence as a whole," (*id.* at 10-12), and that the record shows "Plaintiff would need to be off task over 10% of the day" and "absent at least twice per month," (*id.* at 13).  In making these contentions, Plaintiff points to what he claims is conflicting evidence in the record and takes issue with the weight afforded to medical opinion evidence by the ALJ.  (*Id.* at 16-19.)

**a. Legal Standard Governing Evaluation of Medical Opinion Evidence**

The SSA adopted new regulations effective March 27, 2017, revising the standard for evaluating medical opinion evidence. *See* 20 C.F.R. § 416.920c.  Because Plaintiff filed his claim on February 26, 2020, the new regulations apply.

Under the new regulations, the Commissioner no longer "defer[s]" or gives "controlling weight" to a claimant's treating medical sources.  *Id.* § 416.920c(a).  Instead, when evaluating the

persuasiveness of medical opinions, the Commissioner considers the following five factors: (1) supportability; (2) consistency; (3) the relationship of the medical source with the claimant (taking into account the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the relationship is an examining relationship); (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing [the] medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 416.920c(c). In each case, the ALJ must explain how he or she considered the factors of supportability and consistency, the two most important factors for determining persuasiveness. *Id.* §§ 416.920c(a), (b)(2).

### b. Physical Limitations and Related Opinion Evidence

Plaintiff contends that the restrictions included in Dr. Pollack's medical opinion "would preclude Plaintiff's ability to perform medium work." (Pl. Mem. at 9.) Plaintiff also argues that the ALJ improperly assessed the medical opinion of non-examining state agency physician Dr. Kirsch as being more persuasive than Dr. Pollack's opinion. (Pl. Mem. at 17-18.)

As an initial matter, this Court is not convinced that Plaintiff is correct that Dr. Pollack's opinion would preclude

medium work.  Dr. Pollack assessed that Plaintiff had a "moderate restriction in squatting, bending, lifting, and carrying," a "[m]ild restriction in walking, standing, sitting, and climbing," and should "avoid activities which require heavy exertion."  (Tr. at 572.)  Several courts in this circuit have concluded that an RFC for medium work is consistent with "mild to moderate" limitations in physical capabilities.  *Cain S. v. Comm'r of Soc. Sec.*, No. 20-CV-1513, 2022 WL 17252414, at *4 (W.D.N.Y. Nov. 28, 2022) (collecting cases).  Thus, it is not self-evident that Dr. Pollack's opinion would conflict with the ALJ's RFC determination.

In any event, the ALJ only found Dr. Pollack's opinion to be "somewhat persuasive," instead relying more heavily on Dr. Kirsch, a reviewing state agency physician, who opined that Plaintiff could lift and carry up to 50 pounds occasionally and 20 pounds frequently, and sit, stand, and walk for up to 6 hours in an 8-hour workday.  (Tr. at 17-19.)  The ALJ explained that he did not consider Dr. Pollack's opinion more persuasive even though it was based on a physical examination, because "the findings and limitations appear to be largely based upon the claimant's self reporting and the record is devoid of any other evidence to support his allegations of debilitating lower back pain."  (*Id.* at 17.)  This reflects a proper analysis of opinion evidence, as the ALJ noted that key findings were not supported by a physical examination and conflicted with other evidence in the record.

Plaintiff's argument that the ALJ erred in assigning more weight to Dr. Kirsch's opinion is unpersuasive.  Contrary to Plaintiff's assertions, the ALJ applied a consistent framework when analyzing the opinion evidence.  The ALJ specifically found Dr. Kirsch's opinion more persuasive because of its consistency with both Dr. Pollack's physical examination findings as well as the record generally.  (Tr. at 19.)  Plaintiff takes issue with the ALJ "credit[ing] a doctor who reviewed Dr. Pollack's report and concluded differently rather than Dr. Pollack herself," (Pl. Mem. at 18), but "[a]n ALJ is entitled to rely on the opinions of *both examining and non-examining State agency medical consultants*, because those consultants are deemed to be qualified experts in the field of social security disability," *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 9 (W.D.N.Y. 2022) (citation omitted, emphasis in original).  "Although an examining source is generally afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one."  *Id.* (internal quotation marks and citation omitted).

Plaintiff argues that "Dr. Kirsch was mainly reviewing the report from Dr. Pollack," but Dr. Kirsch also had the benefit of reviewing Plaintiff's medical record as submitted for the disability application.  (Pl. Mem. at 18.)  As noted by the ALJ, the record was "devoid of any other evidence to support

[Plaintiff's] allegations of debilitating lower back pain."   (Tr. at 17.)   Dr. Kirsch would have been able to draw conclusions from this lack of evidence, combined with the physical examination findings of Dr. Pollack, and it was entirely proper for the ALJ to conclude that Dr. Kirsch's opinion was persuasive because it was supported and consistent.

Plaintiff also argues that the ALJ erred in finding Dr. Ahmed's opinion less persuasive. (Pl. Mem. at 18.)   Dr. Ahmed, conducting a review of the record evidence, concluded that Plaintiff did not have a physical impairment that would cause more than a *de minimis* effect on his ability to engage in work-related activity. (Tr. at 18.)   The ALJ found this opinion less persuasive as it was "not consistent with that of [Dr. Pollack]." (*Id.* at 19.)   As with the assessment of Dr. Kirsch's opinion, the ALJ did not err in assigning Dr. Ahmed's opinion less weight.   Dr. Pollack found at least some physical limitations in her physical exam, including reduced squat depth and lumbar spine range of motion, so it was reasonable for the ALJ to conclude that Dr. Ahmed's opinion was inconsistent with Dr. Pollack's findings from the physical examination of Plaintiff.   (*Id.* at 571-72.)   In conclusion, Plaintiff has failed to show that the ALJ erred in his evaluation of the opinion evidence regarding Plaintiff's physical limitations.

### c. Mental Limitations and Related Opinion Evidence

Regarding Plaintiff's mental RFC, the ALJ found that Plaintiff could perform simple, routine tasks; sustain concentration for simple, routine tasks; maintain a schedule; make simple work-related decisions; occasionally interact with supervisors, coworkers, and the public; and occasionally adapt to changes in the work setting. (*Id.* at 15.) Plaintiff challenges this RFC by arguing that (1) the ALJ had no basis for finding that Plaintiff could maintain a schedule, (2) the ALJ mistakenly found that Plaintiff could make simple work-related decisions, (3) the ALJ erred in finding that Plaintiff could occasionally interact with others, (4) the ALJ was incorrect in finding Plaintiff could sustain concentration for simple routine tasks, (5) the ALJ's findings that Plaintiff could occasionally adapt to changes in work settings is baseless, (6) the ALJ should have added a restriction that reflected Plaintiff's ability to handle stress, (7) the ALJ erred by failing to inquire as to whether Plaintiff's bad hygiene would have caused problems with employment, and (8) that the ALJ erred in his "off-task" findings when he concluded that Plaintiff would not require time off task of more than 10% in a workday. (Pl. Mem. at 10-14.) As explained *supra*, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. The Court will instead examine whether the ALJ applied the "correct legal standards" in weighing opinion evidence, and whether "there is substantial evidence,

considering the record as a whole, to support the Commissioner's decision." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (citation omitted).

First, the Court finds that the ALJ properly weighed and relied upon the medical opinions of Drs. Herman, Weitzen, Kamin, and Koocher. The ALJ considered Dr. Herman's opinion persuasive because it was "based upon an in-person evaluation which notes limitations consistent with the doctor's exam and also consistent with treatment notes reporting claimant to be psychiatrically stable with healthy mental status exams and improvement following a history of hospitalizations in 2019." (Tr. at 17.) In conducting this evaluation, the ALJ properly considered the supportability and consistency of Dr. Herman's opinion. Following an examination of Plaintiff, Dr. Herman opined:

> [T]here appears to be no evidence of limitation with respect to this claimant's ability to understand, remember, or apply simple directions and instructions and use reason and judgment to make work-related decisions. Mild limitation to sustain concentration and perform a task at a consistent pace and sustain an ordinary routine and regular attendance at work. No evidence of limitation maintain[ing] well-being, maintain[ing] personal hygiene, and appropriate attire. Intermittent moderate limitation to interact adequately with supervisors, coworkers, and the public and regulate emotions. No evidence of limitation to be aware of normal hazards and take appropriate precautions.

(*Id.* at 578.) The ALJ also found the opinion of reviewing state agency physician Dr. Weitzen to be "generally persuasive" as it was "based upon [a] thorough review[] of the medical evidence" by

a doctor "familiar with the Agency's standard." (*Id.* at 18.) He also found the opinion consistent "with the overall evidence of record" noting Plaintiff's improvement in symptoms "beginning in 2020 and continuing into 2021." (*Id.*) Dr. Weitzen opined that Plaintiff would have several "moderate" or "mild" limitations to his mental functioning. (*Id.* at 67-70.) Dr. Kamin, a second state agency physician, concurred with Dr. Weitzen's opinion. (*Id.* at 18.)

Regarding the testimony of Dr. Koocher, the impartial medical expert who testified at the hearing, the ALJ found Dr. Koocher's opinion "more persuasive" because of its support in the medical record and disability file as a whole, and because it was consistent with other medical evidence in the record. (*Id.* at 19.) Dr. Koocher assessed no more than a "mild to moderate" limitation in any area of mental functioning based on his review of all available evidence. (*Id.*) In weighing each of the four opinions he relied upon, the ALJ explained his findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence supporting those findings. Thus, the ALJ met his burden under the revised regulations. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Second, the Court finds that the ALJ properly discounted the joint opinion of Ms. Marmorale, Plaintiff's treating nurse practitioner, and Ms. Kuhnel, Plaintiff's social worker. The joint

opinion noted "marked" limitations via check-boxes in several areas of mental functioning, and indicated that Plaintiff would likely be absent more than 4 days per month from work due to his impairments. (Tr. at 590-92.)   Ms. Marmorale and Ms. Kuhnel's opinion did not include any explanation for their findings or citation to supporting evidence. (*Id.*)   The ALJ offered a detailed rationale for finding their joint opinion to be less persuasive:

> This opinion is considered less persuasive since it is inconsistent with treatment notes reporting claimant to be psychiatrically stable with generally healthy mental status exams beginning in 2020. The opinion is also contradicted by the findings in Exhibits 18F, 24F, 25F, 26F, 27F and 28F and is inconsistent with Ms. Marmorale's own treatment notes. For example, on January 26, 2021, she noted that claimant's medications were helpful, his mood was euthymic and his affect reactive. She also noted claimant's thought process to be linear and focused and Ms. Marmorale described claimant as "symptomatically stable" (Exhibit 23F). Moreover, Ms. Kuhnel stated on April 14, 2021: "[The claimant] is doing well with his mental health at this time." Her treatment notes illustrate generally intact psychological functioning and claimant's mental status reports are usually within normal limits. It is noted that he works with her on utilizing coping skills and is working through his depressive and anxious symptoms. On January 21, 2021, Ms. Kuhnel's treatment notes indicate that claimant was dating a new girl and that he had other friends. Claimant was also noted to be consistently free of suicidal and homicidal ideation between January and April of 2021 (Exhibit 28F). Although we generally give great deference to the treating opinion, in this particular case that significant limitations noted by Ms. Marmorale and Ms. Kuhnel are not objectively supported and at times are even contradicted by their treatment notes and for those reasons the opinion is found to be less persuasive.

(*Id.* at 18.)   The ALJ properly found the opinion of Plaintiff's treating nurse practitioner and social worker regarding Plaintiff's "marked" limitations to be unpersuasive because it was inconsistent with other record evidence, including their own treatment notes at times.   Furthermore, the Court notes that the opinion, which was provided on a form, did not provide an adequate explanation for the "marked" limitations assessed.

It is true that a treating source's opinion is "all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs." *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (summary order).   Notwithstanding the fact that an ALJ should consider the treating relationship (as the third factor under the new regulations), an ALJ may still properly choose to accord more weight to the opinion of a consulting physician than a treating source. *See Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (consultative examiner's opinion constitutes substantial evidence supporting ALJ's decision to accord little weight to treating source).   In the instant case, the ALJ properly considered the treating relationship and treatment notes, but found the opinion of Ms. Marmorale and Ms. Kuhnel to be without objective support and inconsistent with the other evidence of record.   The Court finds no error in the ALJ's analysis.

### d. Substantial Evidence Supported the RFC

Because the Court finds that the ALJ properly weighed the opinion evidence, the proper next step is to consider whether the ALJ's RFC is supported by significant evidence, rather than reweighing the evidence *de novo*. *Brault*, 683 F.3d at 447. An ALJ is "entitled to weigh all of the evidence available" in making an RFC finding, which need "not perfectly correspond with any of the opinions of medical sources cited" so long as it is "consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

Regarding physical limitations, the ALJ's RFC assessment, which limited Plaintiff to medium work with some additional limitations, is consistent with Dr. Kirsch's medical opinion, which the ALJ found persuasive. (Tr. at 14-15, 84-85.) The consultative examiner, Dr. Pollack, assessed "moderate" or "mild" limitations in several areas of physical functioning, which, as the Court noted *supra*, would not necessarily conflict with an RFC for medium work. *See Cain S. v. Comm'r of Soc. Sec.*, No. 20-CV-1513, 2022 WL 17252414, at *4 (W.D.N.Y. Nov. 28, 2022) (collecting cases). The ALJ's RFC assessment was more restrictive than the opinion of Dr. Ahmed, who found no more than a *de minimis* limitation in any area of physical functioning, but the ALJ properly discounted Dr. Ahmed's opinion, as described *supra*. (Tr. at 18-19.) Thus, the Court finds that the physical limitations in the RFC were supported by substantial evidence.

Turning next to non-exertional restrictions in the RFC, the ALJ found that Plaintiff was "only capable of performing simple routine tasks, can sustain concentration for simple routine tasks, can maintain a schedule, can make simple work related decision, can occasionally interact with supervisors, coworkers and the public and can occasionally adapt to changes in the work setting." (*Id.* at 15.) The Court finds that the ALJ's RFC properly accounted for limitations noted in the medical opinion evidence and was supported by substantial evidence.

Drs. Weitzen and Kamin, upon whose opinions the ALJ relied, opined that Plaintiff could "sustain unskilled work in a setting with low personal contact." (*Id.* at 70, 89.) Both doctors also assessed a "moderate" limitation in Plaintiff's ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along

with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (*Id.* at 67-68, 86-87.)  The doctors assess no significant limitation in Plaintiff's ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. (*Id.*)

The Court finds the ALJ's RFC determination to be consistent with the medical opinions of Drs. Weitzen and Kamin.  "[T]here is significant case law indicating that the ALJ's limitation of a plaintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for his or her [moderate] limitations for performing activities within a schedule and maintaining regular attendance. *Koza v. Comm'r of Soc. Sec.*, No. 22-CV-889 (GWG), 2023 WL 6054513, at *5 (S.D.N.Y. Sept. 18, 2023) (collecting cases).  Likewise, "courts in this Circuit have found that a plaintiff's moderate limitation in maintaining regular attendance and sustaining an ordinary schedule is not

inconsistent with an RFC finding limiting Plaintiff to "simple, routine tasks." *Phillip D. v. Comm'r of Soc. Sec.*, No. 20-CV-6746, 2022 WL 2872646, at *4 (W.D.N.Y. July 21, 2022) (collecting cases). Furthermore, "[l]imitations in work complexity and in interpersonal interaction are often imposed to address a claimant's limitations in adaptive categories of functioning." *Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022) (collecting cases). The ALJ, confronted with "moderate" limitations in several areas of mental functioning, crafted an RFC that limited Plaintiff to conducting "simple routine tasks," making "simple work related decision[s]," only "occasionally interacting with supervisors, coworkers, and the public," and required only "occasional[] adapt[ation] to changes in the work setting." (Tr. at 15.) The Court finds this RFC to be consistent with the medical opinion evidence on which the ALJ relied, and thus to be supported by substantial evidence.

Plaintiff argues that the ALJ's conclusions regarding the RFC "are devoid of any reference to" the moderate limitations noted by Drs. Weitzen and Kamin. (Pl. Mem. at 19.) However, there is no requirement that having a "moderate" limitation in an area of functioning will "result[] in some exertional or non-exertional limitation [being] incorporated into the RFC itself." *Koza*, 2023 WL 6054513, at *5. Likewise, there is no requirement that an ALJ explain exactly which moderate limitation corresponds to which

non-exertional limit in the RFC.  Rather, the ALJ is required to "account[] for" such limitations in the resulting RFC and ensure it is "consistent with" them.  *Id.*  As discussed above, the Court is satisfied that the ALJ properly accounted for the limitations noted in the record in crafting the RFC.

Finally, Plaintiff argues that the ALJ's failure to include time off-task in the RFC conflicted with the moderate limitations noted above, including performing activities within a schedule, maintaining regular attendance, and being punctual.  (Pl. Mem. at 19.)  However, Plaintiff cites no authority for this proposition, and there is substantial case law to the contrary.  *See, e.g., Tamara M. v. Saul*, No. 19-CV-1138, 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (finding that ALJ did not err in failing to incorporate time off-task/attendance limitations in RFC when the medical opinions included moderate limitations in "staying on-task and/or maintaining appropriate levels of attendance") (collecting cases).  As such, the Court does not find any error in the ALJ's decision not to specifically include time off-task or attendance limitations in his RFC, which already limited Plaintiff to "simple routine tasks," "simple work related decision[s]," and only "occasional[] adapt[ation] to changes in the work setting." (Tr. at 15.)

In conclusion, the Court finds that the ALJ properly weighed the opinion evidence, and that his RFC was supported by substantial

evidence.  As such, the ALJ did not err in determining Plaintiff's RFC.

**V. The VE's Testimony was Consistent with the DOT**

Plaintiff also argues that the Vocation Expert's (VE) testimony was inconsistent with the Dictionary of Occupational Terms, referencing statistics found in an "online resource promulgated by the Department of Labor" – O*NET.  (Pl. Mem at 15-16).  According to Plaintiff, O*NET reports that a significant amount of hand packagers, price markers, and housekeeping cleaners report that their work required daily or "constant" interaction with others.  (*Id.*)  Plaintiff urges the Court to apply the O*NET information in lieu of the DOT because the "DOT for [hand packager] was last updated in 1988 and also does not discuss whether [the] job requires any interaction with others."  (*Id.* at 15.) Plaintiff's argument that the Court should refer to O*NET in lieu of the DOT is without merit.

Social Security Ruling ("SSR") 00-4P provides in pertinent part that:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupations Titles ("SCO")]), for information about the requirements of work in the national economy. [The SSA] use[s] these publications at steps 4 and 5 of the sequential process. . . .
>
> When there is an apparent unresolved conflict between VE or [Vocational Specialist ("VS")] evidence and the DOT, the adjudicator must elicit a reasonable explanation for

the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P, 2000 WL 1898704, at *2.  "The VE's reliance on the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules." *Strong v. Berryhill*, No. 17-CV-1286, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019) (internal quotation marks and citation omitted); *see also Valentin v. Berryhill*, No. 17-CV-944, 2018 WL 4300119, at *10 (D. Conn. Sept. 9, 2018) (finding the ALJ did not err at step 5 by relying on job descriptions in the DOT rather than on the O*NET); *Ryan v. Astrue,* 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009)("Even if the VE's testimony was in conflict with O'Net, there is no requirement that the VE's testimony comply with that database. Instead, the VE's testimony must comply with the DOT.").  Significantly, the asserted inconsistency here arises not from the VE's testimony and the DOT, but from Plaintiff's reliance on the O*NET for the amount of interaction with the public or coworkers in each job.  Thus, Plaintiff has asserted a conflict where none otherwise existed.

Plaintiff does not cite to any caselaw holding the VE's reliance on the DOT's job descriptions improper or reference any authority calling into doubt the accuracy of job descriptions in the DOT as compared to the O*NET beyond noting the age of the DOT job descriptions. (Pl. Mem. at 15-16.) Finally, beyond the alleged conflict between the VE's testimony and the O*NET, the Plaintiff alleges no other inaccuracies or errors in the VE's testimony. (*See* Stip. at 4 ("VE Taitz's testimony was consistent with the DOT, except for the limitations about absenteeism, which was informed by his professional knowledge, experience, and observation.").)

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation marks and citation omitted). Here, the ALJ accurately described the Plaintiff's RFC, which the Court has concluded was supported by substantial evidence, in his hypothetical. (Tr. at 48-49.) The VE concluded that such a hypothetical individual would be able to perform the work of hand packager, price marker, or housekeeping cleaner. (*Id.* at 49-50.) The ALJ properly concluded that work

existed in the national economy which Plaintiff could perform at Step Five.

Finally, Plaintiff contends that the training required for an SVP 2 job[4] would be prohibitive given the restriction to only occasional interaction with supervisors, coworkers, and the public included in the RFC. (Pl. Mem. at 16.) Plaintiff argues in the alternative that the ALJ should have inquired as to how training time would have been impacted by his limitations. (*Id.* at 17.) Plaintiff cites no authority for the argument that such training would require more than "occasional" contact with others, beyond stating that it is "obvious." (*Id.* at 16-17.)  The Court finds this argument unavailing, especially in light of the caselaw to the contrary cited by the Commissioner. *See Tyler M. v. Saul*, No. 19-CV-426, 2020 WL 5258344, at *13 (N.D.N.Y. Sept. 3, 2020) (finding the plaintiff's argument that "a thirty-day window for job training requires close interactions with others" to be "entirely speculative and without merit").  The VE was aware of Plaintiff's RFC limiting him to "occasional" contact with others and incorporated the limitation into his response to the ALJ's hypothetical. (Tr. at 48-50.)  As such, the Court finds no error in the ALJ's reliance on the VE's testimony in concluding that "there are jobs that exist in significant numbers in the national

---

[4] SVP 2 jobs require "little or no judgment to do simple duties" and "can be learned on the job in a short period of time," usually in 30 days. *See* 20 C.F.R. § 416.968(a); SSR 00-4P, 2000 WL 1898704, at *3.

economy that [Plaintiff] can perform." (*Id.* at 20.) The Commissioner's decision is supported by substantial evidence in the record.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED,** and Defendant's motion for judgment on the pleadings is **GRANTED.** The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

**SO ORDERED.**

DATED:    March 28, 2024
              Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge